**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GEORGE A. WILLIAMS,
MICHAEL A. PERRYMAN,
MICHAEL B. PRICE, and
JUDY C. SAULS as Personal
Representative for the Estate
of Nolan A. Sauls,

        Plaintiffs,

vs.                                  Case No. 3:00-cv-469-J-32TEM

CONSOLIDATED CITY OF
JACKSONVILLE,

        Defendant.

## ORDER[1]

This case comes before the Court on Plaintiffs' First Motion in Limine: To Preclude Gerald Barrett, Ph.D., From Testifying Or Offering Evidence In This Case. (Doc. 165.) Defendant, Consolidated City of Jacksonville ("City") responded, (Doc. 194-1), and filed additional materials. (Doc. 206.) Counsel for the parties offered additional argument at the Pretrial Conference in this case, held on January 18, 2006,

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

1

the record of which is incorporated by reference. At issue here is whether the Supplemental Report of Gerald V. Barrett, Ph.D., J.D., dated August 1, 2005, and related testimony, disclosed by the City on August 2, 2005, the last day of discovery, should be excluded from evidence at the trial of this case because it constitutes a new expert opinion disclosed beyond the deadline for expert disclosure, and alternatively because it is irrelevant. (See Doc. 165.)

## I.    BACKGROUND

First filed in May, 2000, this case involves Plaintiffs'[2] allegation of racial and gender discrimination in employment, based upon Fire Chief Rayfield Alfred's ("Chief Alfred's") refusal to create in October, 1999, four roving rescue captain positions recommended to him nine days before the expiration of a 1997 eligibility list on which plaintiffs had risen to the top. The case is scheduled for trial starting on February 22, 2006, on Plaintiffs' three remaining claims, brought pursuant to 42 U.S.C. § 1983 (Count I), 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) (Count III), and Fla. Stat. §§ 760.01-760.11 (Florida Civil Rights Act) (Count IV).

The case's protracted history includes two interlocutory trips to the Eleventh Circuit Court of Appeals, (Docs. 50, 52, 115, 118; see Doc. 124), the second appeal

---

[2]   Plaintiffs, four white men, were at the relevant time four lieutenants in the Rescue Division of the Jacksonville Fire and Rescue Department. They are George A. Williams, Michael A. Perryman, Michael B. Price, and Nolan A. Sauls, who died after this action was filed, and was replaced by his widow Judy C. Sauls, as representative for his estate.

2

consuming more than two years.  See Williams v. Consolidated City of Jacksonville, 381 F.3d 1298 (11th Cir. 2004), cert. denied, 125 S.Ct. 1399 (2005); Williams v. Consolidated City of Jacksonville, 341 F.3d 1261 (11th Cir. 2003).  Once the case came back from the Eleventh Circuit the second time, on March 7, 2005, (Doc. 124), discovery was re-opened and extended several times until August 2, 2005.  (Docs. 125, 127, 132, 134, 147, 151.)  The discovery extensions did not specifically address disclosure of expert witnesses or reports.

On June 28, 2005, Plaintiffs disclosed to the City the name of economist Joseph M. Perry, Ph.D., whose report estimating Plaintiffs' economic losses was dated June 26, 2005.  (Docs. 194-1 at 2, 194-3.)  Prior to this date, and as late as May 20, 2005, Plaintiffs had listed another expert economist.  (See Doc. 144-1 at 4.)

On August 2, 2005, the last day for discovery, the City provided a report prepared by its expert witness, industrial psychologist and attorney Dr. Gerald Barrett ("Dr. Barrett").  (Docs. 194-1 at 2, 194-2.)  Though the parties have not provided the Court with a copy of Dr. Barrett's supplemental report, the City, in its response, quotes from a portion of that report entitled "III. Procedural Justice In Promotional Procedures."  Dr. Barrett now considers "the promotional procedures relevant to this case within the context of procedural justice," which he describes as a "widely accepted framework within the field of Industrial/Organizational (I/O) Psychology for considering applicant perceptions of employee selection and promotional

procedures." In its pre-trial stipulation, dated September 2, 2005, the City disclosed that the subject of Dr. Barrett's testimony will be

> industry norms relative to creating new positions on the eve of the expiration of a promotional list, and/or extending the list to allow their creation. Dr. Barrett will testify that it is not normally done absent an emergency, and that no emergency or exigent business necessity was present at the time of chief Alfred's decision . . .. Dr. Barrett will testify that to have created four roving captain positions under the circumstances would have been inconsistent with the norms of procedural justice which are applicable to promotional systems such as that utilized by the Jacksonville Fire and Rescue Department . . . . (Doc. 163-7.)

On Sept. 21, 2005, after Plaintiffs filed their motion in limine to exclude Dr. Barrett's testimony, the City offered to make Dr. Barrett available for deposition relative to his August 2005 report. (Doc. 194-4.) The Plaintiffs have not taken Dr. Barrett's deposition.

## II.    DISCUSSION

Plaintiffs argue that Dr. Barrett should be precluded from testifying or offering any evidence in this case because: 1) Dr. Barrett's new theory is irrelevant because there is no evidence that Chief Alfred considered the "norms of procedural justice" when making his decision to not create the four captain positions; and 2) Dr. Barrett's opinion concerning "procedural justice" was not timely disclosed. (Doc. 165.)[3]

---

[3]    The City concedes (Doc. 194 at 3) that Dr. Barrett cannot testify concerning the alleged racially disparate impact that promoting the four white Plaintiffs to

The City responds that it was permitted to disclose supplemental discovery up to and on the last day of discovery, and that Dr. Barrett's "procedural justice" testimony is relevant because the Court in its July 2002 Order on summary judgment, (Doc. 114), left open the door for evidence and argument about whether Chief Alfred had a legitimate business reason for declining to create the new positions. (Doc. 194-1.)

Though characterized by the City as a "supplemental" expert report disclosed pursuant to Rule 26(e), Federal Rules of Civil Procedure, Dr. Barrett's 2005 report introduces an entirely new theory of industrial psychology called "procedural justice," which was never mentioned in his 2001 report and deposition testimony, and is a significant modification and change from his earlier disclosures. (See Doc. 91 at 31-32, 44-45, 89, and Ex. 1 at 6-8.)

Federal Rule of Civil Procedure 26(a)(2)(C) provides:

> These [expert] disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial . . ..

While technically within this rule, the City nevertheless should have disclosed its expert's new theory before the last day of discovery in this five year old case, to

---

newly created captain positions would have had, in light of the Court's July 2, 2002 summary judgment on the City's thirteenth affirmative defense, (Doc. 114), eliminating any defense arguments based upon disparate impact.

allow for orderly discovery and response by the Plaintiffs. Indeed, the City's counsel acknowledged as much. However, given the unusual circumstances of this case where there was no specific deadline for expert disclosure after discovery was re-opened, and given that Plaintiffs' expert economist's report was not disclosed until only a month before discovery ended, the Court will not exclude the testimony of Dr. Barrett on the basis that it was disclosed too late.

The Court will, however, permit the Plaintiffs to take the deposition of Dr. Barrett, and given the City's tardiness, will require that all reasonable costs of the deposition, including transcription, be borne by the City.

For the foregoing reasons, and upon due consideration, it is hereby **ORDERED:**

1. Plaintiffs' First Motion in Limine: To Preclude Gerald Barrett, Ph.D From Testifying Or Offering Evidence In This Case, (Doc. 165), is **DENIED** at this time.

2. The Plaintiffs are permitted to take the deposition of Dr. Barrett for the limited purpose of inquiring into his proposed testimony as set forth in the Supplemental Report of Gerald V. Barrett, dated August 1, 2005, and the City's Pretrial Statement Expert Witness List, dated September 2, 2005. (Doc. 163-7.) The City will bear all reasonable costs of the deposition of Dr. Barrett.

3. The Court reserves ruling upon the relevancy of Dr. Barrett's proposed testimony, or whether the testimony meets the criteria for expert testimony under Rule

702, Federal Rules of Evidence.  See Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

**DON E AND ORDERED** at Jacksonville, Florida, this 31st day of January, 2006.

_____
TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record