# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GEORGE A. WILLIAMS,
MICHAEL A. PERRYMAN,
MICHAEL B. PRICE, and
JUDY C. SAULS as Personal
Representative for the Estate
of Nolan A. Sauls,

        Plaintiffs,

vs.                                                           Case No. 3:00-cv-469-J-32TEM

CONSOLIDATED CITY OF
JACKSONVILLE,

        Defendant.

_____

# ORDER[1]

    This case comes before the Court on Plaintiffs'[2] First Motion for Sanctions (Doc.

143); Plaintiffs' Second Motion in Limine: To Exclude Evidence Related to Rescue

---

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2]    Plaintiffs were at the relevant time four lieutenants in the Rescue Division of the Jacksonville Fire and Rescue Department ("Department"). They are George A. Williams, Michael A. Perryman, Michael B. Price, and Nolan A. Sauls, who died after this action was filed, and was replaced by his widow Judy C. Sauls, as representative for his estate.

Exams Administered After 1997 (Doc. 166); Plaintiffs' Amended Third Motion In Limine: To Exclude Witnesses Disclosed In An Untimely Manner (Doc. 171-1); Plaintiffs' Fourth Motion In Limine: To Exclude Defendant's Exhibit No. 40 (Doc. 168-1); Plaintiffs' Fifth Motion In Limine: To Exclude Evidence Of Racial Demographics, Or Prior Findings Of Racial Discrimination (Doc. 169); Plaintiffs' Sixth Motion In Limine: To Exclude Defendant's Exhibit No. 27 (Doc. 170); Plaintiffs' Seventh Motion In Limine: To Exclude Remarks By Former Mayor (Doc. 172); Plaintiffs' Motion For Leave To File Eighth Motion In Limine (Doc. 187); and Plaintiffs' Emergency Motion For Leave To File Motion For Summary Judgment Related To Defendant's Fourteenth Affirmative Defense.  (Doc. 176.)  Defendant, Consolidated City of Jacksonville ("City") responded, (Docs. 146-1, 195-1, 184-1, 196-1, 197, 200-1, 199, 191-1, 182), and filed additional materials.  (Docs. 207, 208.)  Additionally, before the Court, is Defendant's *Daubert* Motion In Limine To Exclude Evidence From Admission At Trial (Doc. 173), and Defendant's Second Motion In Limine (Doc. 174), to which Plaintiffs filed responses.  (Docs. 192, 193.)  Counsel for the parties offered additional argument at the Pretrial Conference in this case, held on January 18, 2006, the record of which is incorporated by reference.  (See Doc. 209.)  The Court will address each motion in turn.

## I.   **BACKGROUND**

The issue presented by Plaintiffs' complaint in this case is whether Jacksonville Fire Chief Rayfield Alfred ("Chief Alfred") improperly discriminated against Plaintiffs, four white male lieutenants in the City's Rescue Division, on the basis of their race and sex, when, in October 1999, he did not implement a recommendation to create four roving rescue captain positions nine days before the expiration of a two-year old eligibility list on which Plaintiffs had risen to the top.  Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 (Count I), 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) (Count III), and Fla. Stat. §§ 760.01-760.11 (Florida Civil Rights Act) (Count IV).

The lengthy procedural history of the case is relevant to some of the pending motions. First filed in May, 2000, the case traveled to the Eleventh Circuit Court of Appeals twice for interlocutory appeals.  (Docs. 50, 52, 115, 118; see Doc. 124.) Upon consent motions of the parties, the discovery deadline was extended by the Court several times, (Docs. 27, 49, 127, 134) and ultimately until August 2, 2005, for purposes of completing depositions of the Plaintiffs, resolution of pending motions, and "supplementation of disclosures and responses under Fed. R. Civ. P. 26(e)." (Docs. 147, 151.)  The parties' Pretrial Statement was due on September 2, 2005, (Docs. 151, 163.)  Trial is scheduled to begin on February 22, 2006.  (Docs. 203, 209.)

II.   **PENDING MOTIONS**

   A.   **Plaintiffs' Motion For Sanctions, Including Judgment On The Pleadings, Due To Defendant's Fraud On This Court, And In The Eleventh Circuit Court Of Appeals (Doc. 143-1.)**

As stated on the record at the January 18, 2006 pre-trial conference, this motion is **denied.**

   B.   **Plaintiffs' Second Motion In Limine: To Exclude Evidence Related To Rescue Captain Exams Administered After 1997 (Doc. 166.)**

Plaintiffs argue in their second motion in limine that pursuant to Fed. R. Evid. 401, 402, and 403, the City should not be permitted to present evidence that Plaintiffs did not take subsequent rescue captain eligibility examinations in 2001 and 2004 to obtain a position on later eligibility lists "[b]ecause the decision by the Plaintiffs to not take subsequent Rescue Captain exams is not probative of any alleged failure to mitigate [damages]," and would confuse and mislead the jury.  (Doc. 166 at 3.) Furthermore, Plaintiffs assert that it would be unfair "to penalize the Plaintiffs for not re-taking the examination, when there was every reason for them to believe that the City would again take their race or gender into consideration, and use those characteristics against them, if Plaintiffs were again in a position to otherwise be promoted."  (Doc. 166 at 4.)   The City responds that the evidence concerning

4

subsequent examinations is probative to the Plaintiffs' claim for damages for back pay and for mental anguish, and to explain why Plaintiffs Williams, Perryman and Price temporarily worked as provisional captains prior to the certification of a new Rescue Captain promotional list on February 1, 2002, when they were then relieved of the positions by persons promoted off of the new list.  Furthermore, the City argues that there is no evidence that Chief Alfred or the City ever foreclosed Plaintiffs' opportunity to be considered for a rescue captain position in the future.  (Doc. 195-1.)

The Court finds that the Plaintiffs' conduct in the time subsequent to the events giving rise to their complaint of discrimination, including whether or not they sat for subsequent captain eligibility examinations in 2002 and 2004,  is relevant to their claim for damages for their mental anguish.  (Doc. 163-1 at 9 (Pretrial Statement).) In support of their claim, Plaintiffs' psychiatrist states in his report that Plaintiffs in 2001, reported "a pervasive sense of powerlessness"; that they had "lost hope" that their "professional goals will ever be met"; and that they had a "sense of helplessness" over their future.  (See Doc. 173-2 at 3, 6.)  The fact that Plaintiffs did not attempt subsequent examinations can cut both ways, illustrating Plaintiffs' incapacity to pursue career advancement because of their mental condition, or undercutting it. Furthermore, the fact that the tests were given is relevant to placing in context why Plaintiffs Williams, Perryman and Price held rescue captain positions for an interim period, and also may be relevant to the calculation of their alleged damages.  Finally,

whether the Plaintiffs should not be required to apply for a job for which they have already been rejected based on their race and gender, as plaintiffs argue, implicates the ultimate question for the jury, whether discrimination took place here.[3]

The Court finds that evidence concerning subsequent rescue captain examinations is relevant to issues raised by Plaintiffs in this case, and is not persuaded that its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."   Fed. R. Evid. 403. Plaintiff's second motion in limine is **denied.**

### C.   Plaintiffs' Amended Third Motion In Limine: To Exclude Witnesses Disclosed In An Untimely Manner (Doc. 171.)

In their third motion in limine, Plaintiffs move to exclude a list of fourteen witnesses[4] disclosed by the City on August 2, 2005, which was the last day for supplemental discovery, (Docs. 147, 151.)  and thereafter. (Doc. 171-1; see Docs. 184-1 at 1; 207-2.)  The City responds that Plaintiffs had "more than ample time to interview these witnesses." (Doc. 184-1 at 1.)

_____

[3]     Plaintiff's argument may be misplaced where the job selection process filling vacancies from subsequent eligibility lists is objective and nondiscretionary.

[4]     The names of the fourteen witnesses are: Kenneth Alderman, Roselyn Chall. Archie Cullen, Billy Edwards, Richard Greenwood, Ph.D., Garry A. Griffin, Robert Huntley, Louis A. Iturra, Ronald G. Jolley, John Keane, Gregory L. Miller, Cynthia Peters, Steven Rohan, and Gerald Barrett, Ph.D., J,D.  (Doc. 171-1 at 1-2.)

For the reasons stated on the record at the January 18, 2006 pre-trial conference, Plaintiffs' third motion in limine is **granted**; none of the fourteen witnesses listed in Plaintiff's motion, (Doc. 171-1), will be permitted to testify as fact witnesses at trial,[5] with the exception of those identified for purposes of authenticating admissible evidence or as records custodians, and  rebuttal witnesses.

### D.    Plaintiffs' Fourth Motion In Limine: To Exclude Defendant's Exhibit No. 40  (Doc. 168-1.)

In their fourth motion in limine, Plaintiffs seek to exclude from evidence the City's Exhibit 40, which is listed in the September 2, 2005 Pretrial Statement as a "Certificate from Florida Commission on Human Relations, regarding Michael Price, August 30, 2005,"  (Doc. 163-3 at 5), because it was disclosed after the August 2, 2005 discovery cut off, and because it is not probative to establish whether or not Plaintiff Price satisfied a condition precedent to the filing  his Count III claim under the Florida Civil Rights Act ("FCRA").   § 760.11(1), Fla. Stat.  (Doc. 168-1.)  The City responds that its late disclosure of Exhibit 40 was not in contravention of discovery rules because it was not furnished to the City until August 30, 2005, and that it is relevant to whether Plaintiff Price exhausted his administrative remedies.  (Doc. 196-1.)

---

[5]    Dr. Gerald Barrett may testify as an expert witness for the City, (see Doc. 211) but not as a "fact" witness.

The City's Exhibit 40 is a two-page document, the cover page entitled "Certificate of Authenticity of Documents," signed by the records clerk for the Florida Commission on Human Relations, authenticating  the attached form dated June 9, 2005, in which the Commission checked that it is unable to locate any documents concerning Michael B. Price, with the qualification that "[t]his is not to certify that the case/number referenced above was not received /processed by this Agency."  (Doc. 196-2.)

To bring a claim under the FCRA, an aggrieved party must first file a complaint with the Florida Commission within 365 days of the alleged discrimination.  §760.11 Fla. Stat.; Thompson v. Orange Lake County Club, 224 F. Supp.2d 1368, 1375 (M.D. Fla. 2002).   Resolution of whether Plaintiffs satisfied the FCRA exhaustion requirement is a matter of law.  Thompson, 224 F. Supp. 2d at 1375-76.  The Court, not the jury, will consider Exhibit 40, along with any other evidence on this issue, upon proper motion.  Accordingly, plaintiffs' fourth motion in limine is **moot**.

**E.     Plaintiffs' Fifth Motion In Limine: To Exclude Evidence Of Racial Demographics, Or Prior Findings Of Racial Discrimination, Etc.  (Doc. 169.)**

Plaintiffs' fifth motion in limine seeks to exclude all evidence or references pertaining to any history of racial issues with the Jacksonville Fire and Rescue Department, racial  demographics of the Department, and the fact that the first eight persons promoted off of the 1997 eligibility list were white.  Plaintiffs argue that the

8

evidence is not probative of Chief Alfred's motive or intent because the City takes the position that race played no part in his decision-making process.  (Doc. 169.)  The City responds in opposition that because Plaintiffs allege discrimination on the basis of their race, "information pertaining to these issues may come out as a natural extension of witnesses['] testimony concerning whether or not Chief Alfred discriminated against Plaintiffs."  (Doc. 197 at 2.)

For the reasons provided on the record of the Pretrial Conference conducted January 18, 2006, plaintiffs' fifth motion in limine is **denied without prejudice** to being re-addressed at trial, based upon specific objections to specific testimony and evidence.

### F.      Plaintiffs' Sixth Motion In Limine: To Exclude Defendant's Exhibit No. 27   (Doc. 170.)

The City's Exhibit 27 is an unsigned undated one-page document entitled "Financial Impact," (see Doc. 200-2), which was disclosed by the City to Plaintiffs one month after the close of discovery. Plaintiffs seek to exclude the document because 1) it was untimely disclosed, Fed. R. Civ. P. 37(c); 2) it is not properly authenticated or identified, Fed. R. Evid. 901;  3) the City has not made available the original and underlying documents supporting the financial summary.  Fed. R. Evid. 1006; and 4) there is no evidence establishing that it is relevant to Chief Alfred's 1999 decision at issue here.  (Doc. 170.)

At the January 18, 2006 pretrial Conference, counsel for the City represented that the"Financial Impact" document was prepared by April Mitchell, financial officer with the Department on or about September 1, 2005, one month after the close of discovery.  The "Estimated Financial Impact - Current Fiscal Year" relates to the cost of creating the four captain positions.

At the January 18, 2006 Pretrial Conference, the Court granted leave to the Plaintiff to take the deposition of Ms. Mitchell concerning Exhibit 27 and announced it will make the final determination as to admissibility of the chart at trial.  Accordingly, Plaintiffs' sixth motion in limine in **denied without prejudice.**

**G.    Plaintiffs' Seventh Motion In Limine: To Exclude Remarks By Former Mayor Delaney, Or Others, About <u>Contingent Nature Of Fee Agreement, Etc.  (Doc. 172.)</u>**

For the reasons provided on the record at the January 18, 2006 pre-trial conference, this motion is **denied.**  The Court presumes that counsel will properly advise their witnesses, and direct their examinations and cross examinations properly and in accordance with governing rules, without the necessity of an Order of the Court.

10

**H.**     **Plaintiffs' Motion For Leave To File Eighth Motion In Limine, Out Of Time, Based On Remarks Made By Defense Counsel At Pretrial Hearing On September 21, 2005, And Incorporated Eighth Motion In Limine (Doc. 187.)**

Plaintiffs seek a ruling from the Court to preclude any evidence or reference to the fact that Chief Alfred was dismissed from this suit as a defendant on qualified immunity grounds.  (Doc. 187 at 2.)  For the reasons provided on the record at the January 18, 2006 pre-trial conference, this motion is **granted.**

**I.**      **Plaintiffs' Emergency Motion For Leave To File Incorporated Motion For Summary Judgment, Related To Defendant's Fourteenth Affirmative Defense, Allowed By Order Entered September 13, 2005 (Doc. 176.)**

For the reasons provided on the record at the January 18, 2006 pre-trial conference, this motion is **denied.**

**J.**      **Defendant City Of Jacksonville's *Daubert* Motion In Limine To Exclude Evidence From Admission At Trial (Doc. 173-1.)**

Plaintiffs have named as their expert Dr. Alan J. Waldman ("Dr. Waldman"), a psychiatrist "who will testify regarding Plaintiff['s] mental anguish, mental disorders and mental pain suffered as a result of Defendant's discrimination." (Doc. 163-6.) The City, in its motion, does not challenge Dr. Waldman's qualifications, but rather seeks to exclude: 1) Dr. Waldman's opinion testimony about Plaintiff Nolan A. Sauls,

11

who is deceased; 2) Dr. Waldman's opinion that alleged mental stress created by the events giving rise to this action caused other medical problems experienced by Plaintiffs; and 3) hearsay statements made by Plaintiffs to Dr. Waldman, as set forth in his report.  (Doc. 173-2).

### 1)    Applicable Standards

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.  In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony, 509 U.S. at 592-93.  See also Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). In performing its gatekeeping function, the Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized

12

> expertise, to understand the evidence or to determine a fact
> in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting City

of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

Under the Federal Rules of Evidence, an expert is not confined to admissible

evidence when forming an opinion.  Rule 703 provides that an expert may base an

opinion on inadmissible facts or data "of a type reasonably relied upon by experts in

the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid.

703.  See also Daubert, 509 U.S. at 595.  Thus, a psychiatrist designated as an

expert witness may rely upon hearsay statements of patients and others if such

statements meet the standards of Rule 703.

### 2) Dr. Waldman's Opinion Testimony Concerning Nolan A. Sauls

The City's motion in limine first addresses Dr. Waldman's proposed opinion

testimony concerning plaintiff Nolan A. Sauls, who is deceased.  Specifically, the City

seeks to exclude:

1. Any and all evidence regarding Plaintiff Sauls' suffering from a mental disorder;
2. Testimony that stress contributed to Nolan A. Sauls' death;
3. Hearsay statements of Sauls offered through his widow. (Doc. 173-1 at 1.)

13

### a.   Evidence Regarding Plaintiff Sauls
### Suffering From A Mental Disorder

Dr. Sauls died at the age of 51, of a myocardial infarction on August 7, 2000, three months after the filing of this lawsuit.  (Docs. 28, 173-2 at 10; 173-3.)  On April 10, 2001, Dr. Waldman interviewed Mrs. Sauls at his office "in order to gather information regarding her observations of her husband and statements made to her following the alleged act of discrimination." (Doc. 173-2 at 1 (Dr. Waldman's Report, dated April 13, 2001).)  Dr. Waldman states that "Mrs. Sauls reports that her husband was angry and upset"; "had some obsessional thinking about these incidents"; became "sullen and depressed"; experienced "abnormal" sleep patterns; "had an increase in irritability"; "had lost his libido"; "had become socially withdrawn with those outside of work"; had a 70% drop in energy; and "was tired all the time." (Doc. 173-2 at 9-10.)

Based upon his interview with Mrs. Sauls, (and with the rest of surviving plaintiffs), Dr. Waldman opined "with reasonable medical certainty that each of the Plaintiffs suffered significant mental anguish resulting in mental disorders in each of them as a result of the actions of the Jacksonville Fire Department."

> It is my opinion from the information derived from Judy Sauls that prior to his demise, Nolan A. Sauls suffered from Major Depression as well."
> . . .
> It is my opinion that Dr. Sauls suffered a mental disorder as a result of his trauma from this incident as well.  In addition,

14

> there is compelling literature that points to stress as a
> potential component in coronary vascular disease and heart
> attack.  It is quite possible to probable that this was the
> case in Dr. Sauls' demise.

(Doc. 173-2 at 10-11.)

In reaching his conclusions about the mental health of the late Dr. Sauls, Dr.

Waldman relied only upon the observations of Mrs. Sauls.  Mrs. Saul's comments to

Dr. Waldman about her late husband's statements, actions and demeanor (that can

be framed as first hand observations, or even lay opinion testimony, <u>see</u> Fed. R. Evid.

701), are clearly the sort of information normally relied on by psychiatrists in

determining the mental health of a patient.  Indeed, the notes accompanying Rule 703

underscore that this is the type of information upon which an expert may reasonably

rely:

> [A] physician in his own practice bases his diagnosis on
> information from numerous sources and of considerable
> variety, including statements by patients and relatives,
> reports and opinions from nurses, technicians and other
> doctors, hospital records, and X rays.  Most of them are
> admissible in evidence, but only with the expenditure of
> substantial time in producing and examining various
> authenticating witnesses.  The physician makes life-and-
> death decisions in reliance upon them.  His validation,
> expertly performed and subject to cross-examination, ought
> to suffice for judicial purposes.

Fed. R. Evid. 703 advisory committee's note 1972 proposed rules.

While clearly Mrs. Sauls has an interest in the outcome of this case and in Dr.

15

Waldman's diagnosis that Dr. Sauls was depressed, this is a matter affecting the weight and credibility of Dr. Waldman's testimony - a question to be resolved by the jury.  Dr. Waldman based his opinion on the type of information - the observations of a surviving spouse - which an expert in his field would reasonably rely upon.  It is for the jury to assess his credibility and the weight to be accorded to his testimony.  The Court will allow Dr. Waldman to testify as to his opinion that Mr. Sauls suffered from a mental disorder and major depression as a result of the incident giving rise to this case, without prejudice to the City making otherwise appropriate objections at trial.  The City's motion in limine as to Dr. Waldman's opinion about Dr. Sauls' mental condition is **denied without prejudice.**

### b.   Hearsay Statements of Sauls Offered Through His Widow

According to Dr. Waldman's report, (Doc. 173-2), nearly all of the statements made by Mrs. Sauls to the psychiatrist, which formed the basis Dr. Waldman's opinion and diagnosis, were of the nature of her observations of her late husband's moods, conduct and demeanor, all of which are clearly admissible in their own right, and thus not prejudicial if admitted as the basis for Dr. Waldman's opinion.  The City's motion in limine addressing Mrs. Sauls' observations of her late husband is **denied.**

Hearsay statements by Mrs. Sauls to  Dr. Waldman recounting the events giving rise to this action and actual comments made by Dr. Sauls, constituted a very

minor basis for Dr. Waldman's opinion testimony, according to his report. (Doc. 173-2 at 9-10.). The Court finds Plaintiff Sauls' double hearsay statements to Mrs. Sauls as related to Dr. Waldman concerning Chief Alfred and the roving captain positions, as well as the triple hearsay statement allegedly made by Dr. Sauls concerning what Chief Alfred allegedly said, (Doc. 173-2 at 9-10), were not a significant basis for Dr. Waldman's opinion as to Saul's mental status, lack reliability, and are unduly prejudicial. The City's motion in limine as to Dr. Saul's alleged statements concerning the operative facts giving rise to this action is **granted.** Fed. R. Evid. 403.[6]

### c. Testimony That Stress Contributed To Nolan A. Sauls' Death

Dr. Waldman, in his report, opined that there is "compelling literature that points to stress as a potential component in coronary vascular disease and heart attack," and that "[i]t is quite possible to probable that this was the case in Dr. Sauls' demise." (Doc. 173-2 at 11.) The Court finds this statement to be speculative and inadmissible under <u>Daubert</u>. The City's motion in limine is **granted** as to Dr. Waldman's speculation that stress caused by the events giving rise to his lawsuit, somehow led to Dr. Sauls' heart attack.

---

[6]    This is in accordance with Plaintiffs' counsel's representation at the January 18, 2006 Pretrial Conference that Dr. Waldman would not testify as to all of the statements in the report, and would limit his testimony as to the basis for his opinion to Mrs. Sauls' statements to him about what she observed.

### 3)    Plaintiffs' Statements To Dr. Waldman Concerning Operative Facts Relating To Liability

Dr. Waldman interviewed Plaintiffs George Williams, Michael Perryman and Michael B. Price in a court reporter's office on April 5, 2001  "to determine if there were any psychiatric or emotional problems stemming from the allegations of racial discrimination, which allegedly led to their non-promotion, and the elimination of the positions that they had been promised."  (Doc. 173-2 at 1.)

In his April 13, 2001 report, Dr. Waldman describes, at length and in detail, what the Plaintiffs' reported concerning events in 1999, including what various individuals in the Rescue Division said to each other.  (Doc. 173-2 at 2-8.)  He also presents his medical impressions of the Plaintiffs, and concludes that Plaintiffs Price, Williams and Perryman all suffer from depressive disorder, not otherwise specified, and that Price and Williams suffer from major depression.  (Doc. 173-2 at 10-11.)  He also opines:

> It is my opinion with reasonable medical certainty that the mental disorders and mental pain suffered by the 3-surviving Plaintiffs are a direct result of their mistreatment at the hands of the Jacksonville Fire Department.  (Doc. 173-2 at 11.)

The City seeks to exclude these hearsay and double-hearsay statements made by Plaintiffs to Dr. Waldman concerning operative events, as set forth in Dr. Waldman's report.  (Doc. 173-1 at 6-7.)

18

While evidence rules aimed at excluding unreliable or irrelevant evidence need not be applied to limit the basis for expert opinion, "Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury."  29 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 6273 at 312 (1997).  Moreover, the Court's obligation under Fed. R. Evid. 403 to exclude evidence that is prejudicial, or that will confuse or mislead the jury, cuts across all categories of evidence, including expert evidence.  Thus, while Rule 703 permits experts to state the underlying basis of their opinions (if the information is of the type reasonably relied upon by experts), the underlying information is still subject to exclusion under the balancing test of Fed. R. Evid. 403. Gong v. Hirsch, 913 F.2d 1269, 1273 (7th Cir. 1990); see Allison v. McGhan Medical Corp., 184 F.3d 1300, 1310 (11th Cir. 1999).  The Court "must consider the information's probative value in assisting the jury to weigh the expert's opinion on the one hand, and the risk of prejudice resulting from the jury's potential misuse of the information for substantive purposes on the other."  Fed. R. Evid. 703 advisory committee notes 2000 amendments.

The hearsay and double hearsay statements made to Dr. Waldman in which Plaintiffs "reported" the events giving rise to their claim of discrimination, while setting a framework for Dr. Waldman's opinion that "Plaintiffs suffered significant mental

anguish that resulted in mental disorders in each of them as a result of the actions of the fire department," are not the basis for the opinion.  More pertinent to the jury's evaluation of Dr. Waldman's opinion are his findings of emotional impact, past psychiatric and medical history, review of systems, substance use and abuse, mental status exam, and impressions as to each surviving Plaintiff.  (See Doc. 173-2 at 3, 4, 6, 7-9, 10)  Each of the surviving Plaintiffs will have the opportunity to recount to the jury their version of events, subject to cross examination, which Dr. Waldman can summarily recount was also related to him by the Plaintiffs.[7]  The risk of prejudice in allowing Plaintiffs to re-state their case through Dr. Waldman, immune from cross examination, outweighs the probative value of the hearsay evidence to support Dr. Waldman's opinion.  The Court **grants** this portion of the City's motion in limine.

Furthermore, Dr. Waldman is precluded from making gratuitous statements concerning whether or not Plaintiffs were subject to any "mistreatment."

### 4) Dr. Waldman's Testimony Regarding Plaintiff Williams' Viral Infections

In his report, Dr. Waldman opines that "[r]esearch in the field of Psychoimmunology shows significant changes in the body's immune system from

---

[7]     To the extent these statements may be necessary to explain the basis for the expert's opinion, they will be subject to a limiting instruction admonishing the jury that such evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence.

depression and anxiety.  These findings may explain Lt. Williams now frequent viral infections."  (Doc. 173-2 at 11.)

Counsel fo Plaintiffs conceded at the January 18, 2006 pretrial hearing that  Dr. Waldman's use of the word "may" renders the testimony concerning viral infections "not probative."  The Court agrees, and will not permit Dr. Waldman to speculate whether Plaintiff Williams' viral infections are in any way related to this case.  The City's motion in limine as to this testimony is **granted.**

### K.    Defendant's Second Motion In Limine (Doc. 174.)

The City's second motion in limine is a multi-faceted motion seeking to exclude seven different categories of evidence.  The City cites Rule 403, Federal Rules of Evidence, as the basis for the motion, arguing that the prejudice of each item of evidence outweighs the probative value.  (Doc. 174-1.)  The Court addresses each issue *seriatim*.

### 1)    Litigation Filed Against The District Of Columbia Fire Department During Or Prior To, The Time Ray Alfred Was Chief There, And Related Settlements

Plaintiffs argue that the evidence is relevant to establish Chief Alfred's bad motives in placing the surviving plaintiffs on paid administrative leave and requiring them to have "fitness for duty" psychiatric examinations (following Dr. Barrett's 2001 expert report that the Plaintiffs suffered from "major depression" and "anxiety

disorder") because they filed a lawsuit against him.  Plaintiffs argue that a similar issue arose in prior litigation in the District of Columbia.  Counsel for the City argues that Chief Alfred was not the actor in the prior litigation.

Argument of counsel, who cannot agree on the facts of the prior litigation, let along its relevance to the issues in this case, underscore the danger of permitting the evidence of District of Columbia litigation into this case.  The District of Columbia litigation is a collateral matter, which could confuse the issues, mislead the jury, and lead to a mini-trial on collateral issues causing undue delay in the trial of this case which would not relate to the discrimination alleged in Plaintiffs' claim.  See Anderson v. WBMG-42, 253 F.3d 561, 567 (11th Cir. 2001).  The City's motion in limine as to reference to litigation against the District of Columbia Fire Department is **granted.**

### 2) **The Hopkins Litigation**

Inasmuch as the Plaintiffs represent they do not intend to bring up the settlement of an unrelated lawsuit filed against the City, (Docs . 174-1 at 3; 193 at 5) or mention of the lawsuit, (see Doc.174-5 (Plaintiffs' Exhibit 53)), the City's motion in limine as to the Hopkins litigation is **granted.**

### 3) **Newspaper Articles, Dated 1997-1999 Relating To Adoption Of Fire Department's Current Hiring Plan**

The City seeks to exclude Plaintiffs' Exhibits 46-50 and 55, which are newspaper articles dated 1997 through 1999, discussing the public dialogue that

preceded the adoption of the Fire Department's current hiring plan.  (Doc. 174-1 at 4; 174-6.)  The Plaintiffs respond that "[t]he Court should not preclude Plaintiffs from using *any* evidence that is otherwise admissible, if it is probative of Chief Alfred's motivation with regard to his hiring and promoting practices while he was the Fire Chief in Jacksonville."  (Doc. 193 at 6.)

The Court has reviewed the newspaper articles.  The articles are the creation of newspaper reporters who are not listed as witnesses in this case, and they are rife with inadmissible hearsay, as they would be offered primarily to establish the truth of their contents.  See United States v. Baker, 432 F.3d 1189, 1211-12 (11th Cir. 2005).  While the formulation of the Fire Department's hiring policy may be a relevant area of inquiry, the articles, which may be used to refresh the recollection of witnesses, may not be introduced into evidence themselves.  The City's motion in limine as to Plaintiffs' Exhibits 46-50, and 55 is **granted.**

### 4)     Reference To The City's Alternative Legal Defense Of Disparate Impact

On July 5, 2002, the Court entered summary judgment on the City's thirteenth affirmative defense, eliminating the City's defense that Chief Alfred's actions were justified by the alleged disparate impact of creating four new rescue captain positions into which Plaintiffs would move from the top of the eligibility list.  (Doc. 114.)  Both parties agree that this defense and argument cannot be raised at trial.  (Doc. 174-1

23

at 4; 193 at 7.)  Accordingly, the City's motion in limine as to the City's alternative legal defense is **granted.**

### 5)   Evidence of Retaliation

The City seeks to exclude reference to or any evidence purporting to establish that the City retaliated against Plaintiffs when it required the surviving Plaintiffs to undergo "fitness for duty" examinations following Dr. Barrett's 2001 report concerning the Plaintiffs' mental health.  The basis for the City's motion is that the Plaintiffs' never included a charge of retaliation in their charges filed with the EEOC on December 12, 1999, or anytime thereafter, (Doc. 174-1 at 5), a prerequisite for bringing a claim under Title VII, or by extension, under the Florida Civil Rights Act.  See Pritchard, 2005 WL 2077301, at * 3.  Plaintiffs respond that the evidence of the "fitness for duty" psychiatric examinations is relevant to "Chief Alfred's vindictive motive" and to Plaintiffs' claims for mental anguish.  (Doc. 193 at 7.)

Evidence of Chief Alfred's motive in 1999 when he declined to create four rescue captain positions nine days prior to the expiration of the 1997 eligibility list is relevant to Plaintiffs' claim of discrimination; the parties agree that this is the crux of the case.  In the absence of a retaliation claim, which Plaintiffs have not pled, whether or not Chief Alfred had a "vindictive motive" two or three years later when Plaintiffs underwent "fitness for duty" examinations is not relevant to Plaintiffs' claims of discrimination.  While the psychiatric examinations may be relevant to the question

24

of Plaintiffs' mental anguish damages, this pathway cannot be used to bootstrap inference, implication or argument that Chief Alfred ordered the subsequent exams with "vindictive motive" or in retaliation for the Plaintiffs filing this lawsuit.  The City's motion in limine is **granted** to the extent that evidence of the subsequent "fitness for duty" examinations is used to create an inference of "vindictive motive" or retaliation.

### 6)    Allegations That Roving Captain Positions Were Created in 2002

The Court considers the City's motion in limine seeking to exclude evidence of the filling of rescue captain positions in 2002 (Doc. 174-1 at 5)  in tandem with the Plaintiffs' motion to exclude evidence of Plaintiffs not taking subsequent rescue captain eligibility examinations. (Doc. 166.)  The evidence of subsequent testing and available captain positions is clearly relevant to Plaintiffs' claim for damages as well as to the City's defense of failure to mitigate damages.  It may also bear on Chief Alfred's motive in declining to create such positions in 1999.  Whether or not two positions were "created" in 2002 is a subject of debate between the parties, which could be explained through witness testimony and resolved by the jury.  The City's motion in limine as to whether roving captain positions were created in 2002 is **denied.**

### 7)   Alleged Discriminatory Statements Made By Chief Alfred

Plaintiffs ask the Court to exclude testimony about four statements allegedly made by Chief Alfred.  Evidence tending to show that Chief Alfred uttered a racial slur is probative evidence of illegal discrimination.  Wilson v. Aliceville, 779 F.2d 631, 634-35 (11th Cir. 1986); Miles v. M.N.C. Corp., 750 F.2d 867, 876 (11th Cir. 1985). Excepted from the prohibition of admitting hearsay statements into evidence are statements by a party's agents that can be construed as admissions by a party opponent.  Fed. R. Evid. 801(d)(2)(D).  "Thus, statements made by a supervisory official who plays some role in the decision making process are generally admissible. [Citation omitted.] Moreover, such statements can constitute direct evidence of discrimination."  Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1456 (11th Cir. 1997).  The Court has reviewed the testimony proffered by the City making reference to alleged statements by Chief Alfred.

1.   Witness Ellis Dan Ayscue ("Ayscue") deposition testimony at page 46:

> I was told from - and I want to say it was Phil Eddins, Chief Eddins  - that he made some kind of statement about white people being crackers.  (Docs. 174-1 at 6; 174-9 at 3).

The City's motion in limine to exclude this testimony is **granted**; the testimony is inadmissible double hearsay.  Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1359 n.1 (11th Cir. 1999).   Witnesses may only testify as to what they

26

personally heard Chief Alfred say.  <u>Zaben</u>, 129 F.3d at 1456.

> 2.     Witness Ayscue deposition testimony at page 46:
>
>> I've heard - I've heard - I've overheard or - you know,
>> hearsay - a couple things.  And I can't remember who . . ..
>>                                      . . .
>> . . . That he overheard Chief Alfred said he - before he left,
>> everybody down at headquarters would be black.  But that's
>> - you know, that was hearsay there.  (Doc. 174-9 at 3.)

Plaintiffs concede that Ayscue's statement is inadmissible hearsay.  (Doc. 193 at 15.)

Plaintiffs' motion in limine as to Ayscue's testimony is **granted.**

> 3.     Witness Thomas McCrone deposition testimony at page 19-20:
>
>> A:     Rumors. . .. I mean these are third-, fourth-party
>> rumors, that I've heard . . ..
>>                                      . . .
>> . . . at some meeting at Florida Community College, there
>> was a statement made that there were enough whites on
>> the department.
>>                                      . . .
>> Q:  Did you ever ask Chief Alfred if it was true?
>> A:  No, I did not.  (Docs. 174-1 at 7; 174-13 at 3).

Plaintiffs respond that the testimony is "admissible evidence."  (Doc. 193 at 15.)  The

Court disagrees.  Mere rumors about supervisors' attitudes are inadmissible.  <u>Hodges</u>

<u>v. Stone Savannah River Pulp and Paper Corp.</u>, 892 F. Supp. 1571, 1579 (S.D.Ga.

1995); <u>see also</u> <u>Fitz v. Pugmire Lincoln-Mercury, Inc.</u>, 348 F.3d 974, 978 (11th 2003).

The City's motion in limine as to "rumors" that "there are enough whites in the

department" is **granted**.

4.     Plaintiff objects on Rule 403 prejudice grounds to testimony by witnesses who testify to the effect that Chief Alfred stated that "he didn't have to follow the rules." (Doc. 174-1 at 8.)  Specifically, Plaintiffs wish to exclude witness Ayscue's testimony that he had been told by two different chiefs that Chief Alfred made the statement, (see Doc. 174-9 at 3 (Ayscue dep. at 48)), and witness Larry Pullo's ("Pullo") testimony that:

> Alfred came to town in '95 and his statement to us chiefs was, "I don't have to follow the rules.  I make the rules.  And there are going to be changes.  If you don't like it, you can retire." (Doc. 174-14 at 3 (Pullo deposition at 62).)

The Court finds Pullo's testimony relevant and admissible, assuming it is established that Pullo himself heard Chief Alfred make the statement.  Zaben, 129 F.3d at 1456. Ayscue's statement, however, is inadmissible double hearsay, and thus not admissible evidence.  Damon, 196 F.3d at 1359 n.1.  The City's motion in limine as to testimony of Chief Alfred's statements heard directly by the witnesses, is **denied**.

For the foregoing reasons, and upon due consideration, it is hereby **ORDERED:**

1.     Plaintiffs' Motion For Sanctions, Including Judgment On The Pleadings, Due To Defendant's Fraud On This Court, And In The Eleventh Circuit Court Of Appeals (Doc. 143-1) is **DENIED.**

28

2.      Plaintiffs' Second Motion In Limine: To Exclude Evidence Related To Rescue Captain Exams Administered After 1997 (Doc. 166) is **DENIED.**

3.      Plaintiffs' Amended Third Motion In Limine: To Exclude Witnesses Disclosed In An Untimely Manner (Doc. 171-1) is **GRANTED** consistent with this opinion.

4.      Plaintiffs' Fourth Motion In Limine: To Exclude Defendant's Exhibit No. 40 (Doc. 168-1) is **MOOT.**

5.      Plaintiffs' Fifth Motion In Limine: To Exclude Evidence Of Racial Demographics, Or Prior Findings Of Racial Discrimination (Doc. 169) is **DENIED WITHOUT PREJUDICE.**

6.      Plaintiffs' Sixth Motion In Limine: To Exclude Defendant's Exhibit No. 27 (Doc. 170) is **DENIED WITHOUT PREJUDICE.**

7.      Plaintiffs' Seventh Motion In Limine To Exclude Remarks By Former Mayor Delaney, Or Others, About Contingent Nature Of Fee Agreement, Etc. (Doc. 172) is **DENIED.**

8.      Plaintiff's Motion For Leave To File Eighth Motion In Limine, Out Of Time Based On Remarks Made By Defense Counsel At Pretrial Hearing On On September 21, 2005, And Incorporated Eighth Motion In Limine (Doc. 187) is **GRANTED.** Plaintiffs' Eighth Motion in Limine is **GRANTED.**

29

9.     Plaintiffs' Emergency Motion For Leave To File Incorporated Motion For Summary Judgment, Related To Defendant's Fourteenth Affirmative Defense, Allowed By Order Entered September 13, 2005 (Doc. 176) is **DENIED.**

10.    Defendant City Of Jacksonville's *Daubert* Motion In Limine To Exclude Evidence From Admission At Trial (Doc. 173-1) is **GRANTED IN PART AND DENIED IN PART,** consistent with this opinion.

11.    Defendant's Second Motion In Limine (Doc. 174-1) is **GRANTED IN PART AND DENIED IN PART** consistent with this opinion.

12.    If any party believes that they have a basis to ask the Court to revisit any of these rulings at trial, they may request to proffer the evidence outside of the presence of the jury.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of February, 2006.

_Timothy J. Corrigan_
**TIMOTHY J. CORRIGAN**
United States District Judge

j.
Copies to:
Counsel of Record

30