**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GEORGE A. WILLIAMS,
MICHAEL A. PERRYMAN,
MICHAEL B. PRICE, and
JUDY C. SAULS as Personal
Representative for the Estate
of Nolen A. Sauls,

           Plaintiffs,

vs.                                                    Case No. 3:00-cv-469-J-32TEM

CONSOLIDATED CITY OF
JACKSONVILLE,

           Defendant.

_____

**ORDER[1]**

    This is a Title VII employment discrimination case.  A jury returned a verdict

largely in favor of the four plaintiff fire lieutenants and against defendant, the City of

Jacksonville, Florida. The case is presently before the Court on Plaintiffs' Motion For

Attorneys' Fees, Costs And Expenses As Prevailing Parties. (Doc. 274-1.) The

defendant does not dispute that the plaintiffs as prevailing parties are entitled to an

---

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore
is available electronically.  However, it is intended to decide the motion addressed
herein and is not intended for official publication or to serve as precedent.

award of attorneys' fees and costs, see 42 U.S.C. § 2000e-5(k) (Title VII); § 760.11(5)

(Florida Civil Rights Act)("FCRA");[2] Fed. R. Civ. P. 54; 28 U.S.C. § 1920, but does

dispute the plaintiffs' requested amount.   Having considered the numerous

memoranda of law and evidentiary submissions of the parties, (Docs. 271-1 to 271-6,

273-1 to 273-3, 274-1 to 271-4, 276-1, 276-2, 279-1, 279-2, 285-1 to 285-3, 286-1,

286-2, 287-1, 287-2, 288-1 to 288-15, 289-1 to 289-15, 291-1 to 291-9, 293-1 to 293-

9, 298-1 to 298-9, 299-2, 300-2, 304-1, 304-2, 319-1, 319-2, 319-3, 324-2, 325-2,

327, 333-1, 333-2, 338, 339), and heard argument of counsel (Doc. 294)[3], the Court

is prepared to rule on the motion.

## I.   Background

First filed in May, 2000, this case involves plaintiffs' allegation of racial and

gender discrimination in employment.   Plaintiffs' four-count Complaint alleged the City

---

[2]      The FCRA provides that the prevailing party may receive reasonable
attorneys' fees as part of costs, "interpreted in a manner consistent with federal
case law involving a Title VII action." §760.11(5), Fla. Stat. Plaintiffs are limited by
Florida's sovereign immunity in total recovery, including fees and expenses, to
$100,000.00 each in accordance with § 768.28, Fla. Sta., under the FCRA. There
are no similar limitations under Title VII.   Gallagher v. Manatee County, 927 So.2d
914 (Fla. 2d DCA 2006), rev. denied, No. SC06-914, 2006 WL 2403898 (Fla. Aug.
8, 2006).   (See Doc. 274-1 at 5 n.4.)

[3]      As announced in open court, the Court does not consider documents
relating to settlement negotiations between the parties (Docs. 288-13 to 288-15,
289-15, 292-1 to 292-8) as being relevant to the issues before it.   Plaintiffs'
Consent Motion For Leave To File Complete Documentation Of Settlement Efforts
Related To Plaintiffs' Motion For Fees, Etc. (DKT 274) (Doc. 292) is denied.

of Jacksonville ("City") and Fire Chief Rayfield Alfred, both named as defendants in each count, violated 42 U.S.C. § 1983 (Count I); 42 U.S.C. § 1981 (Count II);  42 U.S.C. §§ 2000e to 2000e-17 (Title VII) (Count III), and Fla. Stat. §§ 760.01-760.11 (Florida Civil Rights Act) (Count IV).  Plaintiffs sought punitive damages in Counts I and II. (Doc. 15.)  The issue presented by plaintiffs' complaint in this case was whether Chief Alfred improperly discriminated against plaintiffs, four white male lieutenants in the City's Rescue Division, on the basis of their race and sex, when he did not implement a recommendation to create four roving rescue captain positions and promote the plaintiffs.

The case's protracted history includes two interlocutory trips to the Eleventh Circuit Court of Appeals, (Docs. 35, 50, 52, 115, 118; see Doc. 124), the second appeal consuming more than two years.  See Williams v. Consolidated City of Jacksonville, 341 F.3d 1261 (11th Cir. 2003), rehearing en banc denied, 381 F.3d 1298 (11th Cir. 2004), cert. denied, 543 U.S. 1187 (2005) .  The case was thoroughly litigated by the parties through the years; plaintiffs took 26 depositions in this case and defendant took seven depositions.  (Doc. 274-1 at 6 n.5.)  The case had 240 docket entries up to the date of trial.

Plaintiffs' original claims, four against the City, and four against Chief Alfred, were whittled over the years to two claims against the City - Title VII and the FCRA

claim - by the time of trial.  Specifically, on November 1, 2000, the Court[4] dismissed as a matter of law Count II against the City, brought pursuant to 42 U.S.C. § 1981. (Doc. 30 at 7-8.)

The defendants unsuccessfully appealed the Court's denial of their motion to dismiss Counts I and II against Chief Alfred in his individual capacity on the basis of qualified immunity.  (Doc. 30).  This first interlocutory appeal consumed eight months, from November 30, 2000 to July 25, 2001.  (Docs. 35, 52.)

Defendants continued to challenge plaintiffs' Sections 1981 and 1983 claims against Chief Alfred in his individual capacity, filing a motion for summary judgment asserting that Chief Alfred is protected by qualified immunity.  (Doc. 79, 80 at 23-32.) On July 5, 2002, the Court denied defendants' motion, (Doc. 114), and defendants appealed.  The Eleventh Circuit reversed, holding that, while "a decision not to *create* new positions that is based solely upon the race and gender of the next eligible candidates for promotion, in the absence of a valid affirmative action plan," would violate the Equal Protection clause, Williams, 341 F.3d at 1269 (emphasis in original), Chief Alfred was not on notice by existing case law that a decision not to create new positions would be unconstitutional.  Thus, he was entitled to qualified immunity.  341 F.3d at 1272-73.  Plaintiffs moved for reconsideration *en banc* by the Eleventh Circuit,

---

[4]     This case was originally before a different judge.  It was reassigned on September 22, 2005 to the undersigned for trial.  (Doc. 188.)

which was denied, and then unsuccessfully petitioned for certiorari to the United States Supreme Court.  See Williams v. Consolidated City of Jacksonville, 381 F.3d 1298 (11th Cir. 2004), cert. denied, 543 U.S. 1187 (2005).  On April 6, 2005, pursuant to stipulation of the parties, Chief Alfred was dismissed from the case in both his individual and official capacities.  (Doc. 129.)  See Williams, 341 F.3d at 1273.

Just days before trial, plaintiffs voluntarily dismissed their Section 1983, Title VII and FCRA gender discrimination claims against the City.  (Doc. 234.)  Remaining for trial were plaintiffs' virtually identical Title VII and FCRA claims[5] against the City, alleging discrimination on the basis of race.

On March 3, 2006, following six days of trial and two days of deliberations, the jury returned a verdict in favor of each of the plaintiffs on their Title VII and FCRA race discrimination claims, finding that plaintiffs' race was a substantial or motivating factor in the City's October 1999 decision not to create four new roving rescue captain positions.  The jury awarded plaintiffs a total of $226,532.51 in compensatory damages for back wages and benefits.  (Doc. 252.)[6]

---

[5]     See Harper v. Blockbuster Entertainment Corp, 139 F.3d 1385,1389 (11th Cir. 1998); Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1030 n.3 (Fla. 1st DCA 2002).

[6]     Specifically, the jury awarded: $58,525.32 to George A. Williams; $60,642.42 to Michael A. Perryman; $87,535.82 to Michael B. Price; and $19,828.95 to Judy L. Sauls, as personal representative for the estate of Nolen A. Sauls.  The jury awarded no damages for emotional pain or mental anguish.  (Doc. 252.)

Plaintiffs filed a post-trial motion for injunctive relief, including retroactive promotions, back pay, and pre-judgment interest.  (Doc. 269.)  Post-trial litigation concerning this motion (Docs. 270, 277, 280, 283, 290, 295, 301, 305) culminated in the Court's Order granting plaintiffs' motion for post-trial relief.  (Doc. 308.)  The Court entered Judgment in this case on May 15, 2006, awarding plaintiffs  a total of $203,546.96 in compensatory damages[7]; prejudgment interest; and injunctive relief, requiring the defendant to promote each surviving plaintiff to the rank of Rescue Captain, retroactive to October 13, 1999, with retroactive seniority, pre-judgment salary increases and front pay, adjustments to pension benefits consistent with the retroactive promotion and pay; and post-judgment interest as provided by 28 U.S.C. § 1961.  (Doc. 309.)

Post-judgment, the City sought judgment as a matter of law and, in the alternative, a new trial, and also filed a motion to stay the judgment pending appeal (Docs. 313, 315), spawning additional briefing by the parties.  (Docs. 314, 318, 321, 323, 326, 328, 329, 331, 337.)  The Court denied the City's post-trial motion for judgment or new trial.  (Doc. 341.)

Plaintiffs' initial fee and cost application seeks attorneys' fees in the amount of

_____

[7]     The compensatory damages were as follows: $58,525.32 to George A. Williams; $60,642.42 to Michael A. Perryman; $64,550.27 to Michael B. Price; and $19,828.95 to Judy L. Sauls, as personal representative for the estate of Nolen A. Sauls. Plaintiff Price's compensatory damages were adjusted to account for the injunctive relief awarded relating to his pension.

$467,308.50, enhanced by a multiplier of one-third to 100%, plus "reimbursement" of a $20,000.00 retainer, and expenses of $51,689.62, through April 6, 2006.  (Docs. 270-2 at 19; 274-1 at 2-3, 19, 24; 287-1 at 1; 298-1 at 1; 299-2 at 1.)  Plaintiffs' support their application with the affidavit of their counsel and billing records, (Doc. 271), as well as affidavits of other attorneys with experience representing plaintiffs in employment cases.  (Docs. 273-2, 273-3, 276-2, 285-2, 285-3.)  Subsequently, plaintiffs supplemented their motion for attorneys' fees incurred from March 16, 2006 through June 13, 2006, seeking an additional $50,138.50 for post-trial work, and $975.47 in costs.  (Doc. 319-1 at 2-3.)    The total amount of fees sought is $535,697.00 (not counting the requested fee multiplier), plus $52,665.09 in costs, for a total of $588,362.09.  (Docs. 298-1 at 1; 319-1.)[8]

Defendant opposes plaintiffs' application, arguing that the requested hourly rates are excessive, and that the hours claimed are duplicative, unnecessary, and excessive, and should be reduced accordingly.  (Doc. 291.)  The City urges that plaintiffs recover no more than $216,746.25 in attorneys' fees.  (Doc. 327 at 1.)

---

[8]    Plaintiffs' lead attorney Scott Fortune seeks $419,991.50 for 1,423.70 hours at $295.00 an hour.  Plaintiffs also seek recovery for the work of attorney Kimberly Gossett in the amount of $20,4897.25 for 117.07 hours at $175.00 an hour; and for law clerks Ardian Gjoka (a practicing attorney in Albania who has completed his legal education in the United States but has not yet sat for the Bar exam) in the amount of $68,146.25, for 545.17 hours at $125.00 an hour; and Robert Dehne for 94.30 hours at $75.00 an hour totaling $7,072.50, for a total lodestar amount of $535,697.00 through June 13, 2006, including "reimbursement" of $20,000 for plaintiffs' retainer.  (Docs. 274-1 at 21-22, 25 n. 13; 273-1 at 2; 287-1 at 1; 319-2.)

7

Furthermore, the City contends that the plaintiffs are entitled to no more than $33,965.47 for costs, arguing that the costs associated with the Sections 1981 and 1983 claims, on which the plaintiffs did not prevail, should be disallowed, (Doc. 304-1 at 4; 327 at 3), and that particular costs should be reduced by 25 percent or eliminated altogether.  (Doc. 304-1 at 6-12.)

## II.   **Attorneys' Fees**

A reasonable attorneys' fee under Section 2000e-5(k) is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonably hourly rate."  <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)[9]; <u>Cullens v. Georgia Dept. of Transportation</u>, 29 F.3d 1489, 1491-92 (11th Cir. 1994).   In this calculation, the Court should exclude hours that were not reasonably expended. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).  After calculating this "lodestar" the Court may then, within its discretion, adjust the amount upward or downward based on other considerations not yet figured in the computation, including results obtained and quality of representation,  <u>Id</u>.; <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 (11th Cir. 1994).

"The fee applicant bears the burden of establishing entitlement and

---

[9]      Though <u>Blum</u> was decided under 42 U.S.C. § 1988, the analysis of what is a "reasonable fee" applies uniformly to all similarly worded federal fee-shifting statutes, including section 2000e-5(k).  <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).

8

documenting the appropriate hours and hourly rates." <u>Norman v. Housing Authority of City of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988).  With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates.  <u>Id</u>. at 1299.  In addition, the Court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services.  <u>Id</u>. at 1303.

### A.    Reasonable Hourly Rate

The first step in the computation of the lodestar is determining the reasonable hourly rate.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1396 (11th Cir. 1996); <u>Norman</u>, 836 F.2d at 1299.[10]  In addition, the Court takes into account factors set forth in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), to the extent they are relevant to the reasonableness of the rate.[11]   <u>See</u>

---

[10]    Services of paralegals and law clerks are also compensable at market rates. <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 288-89 (1989).

[11]    These factors include: (1) time and labor required; (2) the novelty and difficulty of the case; (3) the skill required to perform the legal services; (4) preclusion of other employment due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time constraints; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the

Loranger, 10 F.3d at 781 n.6 (noting that although Johnson factors were subsumed into lodestar by the Supreme Court in Hensley, 461 U.S. at 434 n. 9, they are appropriately considered when establishing a reasonable hourly rate); George v. GTE Directories Corp., 114 F. Supp.2d 1281, 1286 (M.D. Fla. 2000).

### 1.    The Parties' Positions

Plaintiffs seek compensation at the following hourly rates: $295.00 an hour for the work of attorney Scott Fortune; $175.00 an hour for attorney Kimberly A.  Gossett; $125.00 an hour for law clerk Ardian Gjoka; and $75.00 an hour for summer law clerk/intern Robert Dehne.  (Doc. 274-1 at 2; 273-1 at 2; 319-2 at 1.)  Plaintiffs have submitted affidavits supporting the reasonableness of the requested hourly rates. (Docs. 273-2, 273-3, 276-2, 285-2; 285-3.)  Plaintiffs also cite to the Middle District of Florida decision American Charities for Reasonable Fundraising Education, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1313 (M.D. Fla. 2003), in which primary counsel for plaintiffs who prevailed on summary judgment in a civil rights case recovered at rates ranging from $250 to $325 an hour.  Plaintiffs' counsel requests reimbursement of all fees at current rates, instead of historical rates, to compensate for the delay in payment.  (See Docs. 274-1 at 22; 319-2.)

Defendant, citing the opinions of its experts, urges the Court to consider a

---

nature and length of the professional relationship with the client; (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

single "blended" rate (or average) of $235.00 an hour for the services of Mr. Fortune,

taking into account the progression of reasonable rates for the Jacksonville market

from 1999 when this case commenced, through 2006.  Alternatively, defendant urges

that the Court value Mr. Fortune's work at $200.00 an hour for the years 1999-2002;

$235.00 an hour for 2003-04; and $250.00 an hour for 2005-06. (Doc. 291-1 at 13.)

In addition to the opinions of its experts, defendant cites a September 2005 decision

by another judge in the Jacksonville Division of this Court awarding Mr. Fortune

attorneys' fees at a rate of $235.00 an hour as counsel for a prevailing plaintiff in an

employment discrimination case, filed in 2003 and  tried in November 2004.  (Docs.

288-2 at 7, ¶22; 288-5; 289-2 at 11 (Kirkland v. Atlantic Marine, Inc., Case No. 3:03-

cv-530-J-25MMH, Doc. 149 (M. D. Fla. Sept. 2, 2005)(Adams J.).)  In that case, Mr.

Fortune submitted  affidavits in support of his fees stating that $265.00 an hour was

reasonable.  (Docs. 288-2, at 7, ¶ 22; 288-6 at 4, ¶ 15; 288-7 at 2, ¶ 6; 288-8 at 2, ¶

6; 289-2 at 11.)[12]

As to plaintiffs' second attorney,  Ms. Gossett, defendant disputes plaintiffs'

submitted rate of $175.00 an hour, arguing that her compensable rate should be a

_____

[12]      Defendant's experts also cite to another Jacksonville Division case in which
the Court awarded attorneys' fees to the prevailing plaintiff in a discrimination case
for work done in 2001-02 at a rate of  $260.00 an hour for lead counsel; $175.00
an hour for second chair counsel; and $75.00 an hour for paralegals and law
clerks.  (Docs. 288-2 at 708, ¶ 23; 288-9; 289-2 at 12 (Berg v. Transcontinental
Title Co., Case No. 3:00-cv-1228-J-21-TJC (M.D. Fla. Aug. 4, 2003)(Nimmons,
J.).)

blended rate of $150.00 an hour, or alternatively $110.00 for the years 1999-2002; and $160.00 an hour in 2003.  (Doc. 291-1 at 13; <u>see</u>  Docs. 288-2 at 8, ¶ 26; 289-2 at 13.)  At the time of her participation in the litigation in 1999 through 2002, Ms. Gossett had two to five years experience.  (Doc. 288-2 at 8, ¶ 26; 289-2 at 13.)

Plaintiffs seek a rate of $125.00 an hour for Mr. Gjoka, who has to be categorized for purposes of this fee application as a law clerk.  Defendant argues that Mr. Gjoka's time is compensable at $75.00 an hour for 2004, and $85.00 an hour for 2005-06.  (Doc. 291-1 at 14; <u>see</u> Doc. 289-2 at 14.)  Finally, defendant contends that the rate of $65.00 an hour is reasonable compensation for the work of summer law clerk/intern, Mr. Dehne.  (Docs. 324-2 at 5.)

## 2. <u>Discussion</u>

"In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates."  <u>Norman</u>, 836 F.2d at 1302.  <u>See also</u> <u>Missouri v. Jenkins</u>, 491 U.S. 274, 283-84 (1989).  Accordingly, the Court will award fees for the entire litigation at current rates.

Plaintiffs' lead attorney Scott Fortune has been practicing law for 24 years since 1982, and, since 1985, has been self-employed and representing employees as plaintiffs in employment discrimination law suits.  He is also a certified mediator. (Doc. 271-1, ¶¶ 2, 7, 8, 9, 13.)  He took this case on a contingent fee basis in 1999,

receiving a retainer of $5,000 from each Plaintiff.  (Doc. 274-1 at 5.)

Mr. Fortune bases his requested rate of $295.00 an hour upon the fee that he charges potential litigants for a one-hour preliminary consultation. (Docs. 271-1, ¶ 12; 297.)  The Court is not persuaded that a fee for a one-time, pre-litigation consultation is indicative of a reasonable rate in the Jacksonville market for an entire Title VII case.

More instructive is the Court's decision in Kirkland, supra, for work by Mr. Fortune in a Title VII discrimination lawsuit litigated in 2003 and 2004.  There, the Court awarded Mr. Fortune, as counsel for the prevailing plaintiff, attorneys' fees at the rate of $235.00 an hour.   Moreover, the Court notes that Mr. Fortune acknowledged that the rate he is seeking here is higher than he has ever been awarded by a court.

The Court may use its discretion and expertise to determine the appropriate hourly rate.  See Scelta v. Delicatessen Support Services, 203 F. Supp.2d 1328, 1331 (M.D. Fla. 2002).  Upon review of the case law and affidavits in support of and in opposition to the motion for attorney's fees, and in consideration of the Johnson factors, the Court concludes that $260.00 an hour is a reasonable hourly rate in the relevant legal community for successful lead counsel in this Title VII discrimination lawsuit.  The Court applies the rate of $260.00 an hour to hours billed by Mr. Fortune from the commencement of work on this lawsuit in 1999 to the present.

As to fees for Ms. Gossett, who billed time in this case from 1999 through 2003

as a relatively new attorney, the Court holds that $160.00 an hour is a reasonable rate, applied to all time billed.

Further, the Court is guided by the prior decision in <u>Kirkland</u>, which awarded law clerk fees for Mr. Gjoka at the rate of $75.00 an hour for trial work concluding November 2004, and determines that a reasonable current rate for Mr. Gjoka is $100.00 an hour, recognizing that over a year and a half has passed, and observing Mr. Gjoka's contribution in this case.  Finally, noting that summer law clerk/intern Mr. Dehne had completed just one year of law school at the time he worked on this case, the Court agrees with the defendant that the hourly rate of $65.00 is reasonable compensation for his work.

### B.    Reasonable Hours Expended

In calculating what hours were reasonably spent on the litigation, exclusions for unnecessary or excessive time expended is left to the discretion of the Court. <u>E.E.O.C. v. Enterprise Leasing Co.</u>, Case No. 8:00-cv-2012-T-24-EAD, 2003 WL 21659097, at * 3 (M.D. Fla. 2003)(citing <u>Norman</u>, 836 F.2d at 1301). The Court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims.  <u>Duckworth</u>, 97 F.3d at 1397. "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours . . . ." <u>Norman</u>, 836 F.2d at 1303, and objections thereto must be equally specific and precise.  <u>Duckworth</u>, 97 F.3d at 1397;  <u>Norman</u>, 836 F.2d at 1301.  Here, where

plaintiffs are seeking recovery for 1,540.77 hours of attorney time plus 639.47 hours of law clerk/legal assistant time[13] (Doc. 319-2), documented by voluminous submissions, the Court does not engage in an hour by hour analysis.  St. Fleur v. City of Ft. Lauderdale, 149 Fed. Appx. 849, 854 (11th Cir. 2005)(citing Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001)).

### 1.   Unsuccessful Claims

Where prevailing plaintiffs have succeeded on only some of their claims, time spent on "discrete and unsuccessful claims" should be deducted.  Duckworth, 97 F.3d at 1397-98; Norman, 836 F.2d at 1302.   This requires the Court to identify unsuccessful "claims that were unrelated to the claims on which [the plaintiffs] succeeded" or determine whether the time spent on the unsuccessful claims may properly "be deemed to have been 'expended in pursuit of the ultimate result achieved.'"  Hensley, 461 U.S. at 434 (citation omitted).  The Court's determination of the amount of reduction is discretionary; "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  Hensley, 461 U.S. at 436-37.  In determining whether the unsuccessful claims are related to successful claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

---

[13]    Plaintiffs' hours break down as follows: 1,423.70 hours for lead counsel Mr. Fortune; 117.07 hours for attorney Ms. Gossett; 545.17 hours for law clerk Mr. Gjoka; and 94.30 hours for law clerk Mr. Dehne.  (Doc. 319-2.).

reasonably expended on the litigation" and normally award a full compensatory fee for excellent results or a reduced fee for limited success.  Hensley, 461 U.S. at 435-36.  Under Hensley, claims are considered related if they are based on related legal theories or involve a common core of facts.  Id. at 435.

Here, plaintiffs lost, as a matter of law, their Section 1981 claim against the City seven months after filing their Complaint.  (Doc. 30 at 7-8.)  The Eleventh Circuit determined in August, 2003, that Chief Alfred was entitled to qualified immunity, Williams, 341 F.3d at 1272, and in April, 2005, after further unsuccessful appeals by plaintiffs, Chief Alfred was dismissed from the case in both his individual and official capacities.  (Doc. 129.)  On February 19, 2006, just days before trial, plaintiffs dismissed their Section 1983 and Title VII/FCRA gender discrimination claims against the City.  (Doc. 234.)

Plaintiffs argue that because they prevailed on their claims submitted to the jury, and that "[t]he claims that were dismissed before trial involved facts that were completely interrelated to the claims at trial," no time should be deducted from their proposed lodestar.  (Doc. 274-1 at 20.)  They urge that the Court should not deduct any hours spent on the Section 1983 claim, or hours spent on any appellate work protecting it inasmuch as their election to drop the Section 1983 claim before trial was "because it added nothing of substance of their claims, and would have possibly created jury confusion, due to the different, more difficult standard of liability under

16

that statute, versus under Title VII/FCRA."  (Doc. 274-1 at 12.)

Defendant argues that "had only the employer been a defendant, and had there been only the Title VII and FCRA counts in the Complaint, the case would have ended approximately three years ago, even if it had gone to trial, and been much simpler, less controversial, and less expensive."  (Doc. 291-1 at 1-2.)  Defendant seeks a reduction in hours billed on these unsuccessful claims as follows: 271.45 hours billed by Mr. Fortune, 23.3 hours billed by Ms. Gossett; and 5.75 hours billed by Mr. Gjoka. (Doc. 291-1 at 2-11; see Doc. 288-3, ¶ 50.)

After the Eleventh Circuit determined that Chief Alfred had qualified immunity from Section 1983 liability, plaintiffs continued to pursue a dubious Section 1983 claim against the City, only to drop it right before trial.  (See Docs. 226 at 5-8; 231 at 2.) Plaintiffs also dropped their gender claims days before trial, for "tactical reasons," "because Plaintiffs' counsel believed all along that 'race' was the primary motivation for the Chief's decision."  (Doc. 274-1 at 12-13.)[14]

Defendant should not have to pay for the time the plaintiffs spent developing their unsuccessful Section 1983 claims, which can be readily identified and reasonably approximated.  See St. Fleur, 149 Fed. Appx. at 854 (reducing fee award

---

[14]     The Court is not deducting any specific time spent by plaintiffs' counsel pursuing the Title VII gender discrimination claims inasmuch as time that appears to be  intertwined with the Title VII race discrimination claims so as to make it indistinguishable.

by time spent on unsuccessful Section 1983 claim where plaintiff prevailed on Title VII claim).  "Even if, as Plaintiff claims, his Title VII and § 1983 claims are closely related, . . . Plaintiff's degree of success was less than the relief he would have obtained had he succeeded on his § 1983 claim."  St Fleur, 149 Fed. Appx. at 854.

Reviewing the time spent by plaintiffs' counsel in pursuing an unsuccessful Section 1981 claim against the City through the first six months of the case; on unsuccessful claims against Chief Alfred through two appeals, including a petition for certiorari to the Supreme Court; and on a voluntarily dismissed Section 1983 claim against the City, the Court makes the following reductions of requested hours: 350 hours billed by Mr. Fortune; 25 hours billed by Ms. Gossett;[15] and 6 hours by Mr. Gjoka.

### 2.   Specific Objections

The Court now reviews defendant's specific objections.  See ACLU of Ga. v. Barnes, 168 F.3d 423, 428-29 (11th Cir. 1999).  Defendant proposes the following reductions in hours billed:

i.     3.8 hours billed by Mr. Fortune for "premature filing of Complaint.  (Doc. 291-1 at 2.)

ii.    22.7 hours billed by Mr. Fortune and 6.45 hours by Ms. Gossett

---

[15]    Although the Court actually reviewed the billing records to make appropriate reductions, it turned out that the reduction in hours for Mr. Fortune and Ms. Gossett is approximately 25% of the total hours claimed.

18

regarding Plaintiffs' motion for preliminary injunction to stop the certification of the November 2001 rescue captain promotional examination, which was denied.  (Doc. 291-1 at 9-10.)

iii.    102.09 hours by Mr. Fortune; 18.3 hours billed by Ms. Gossett; and 166.0 hours billed by Mr. Gjoka in miscellaneous reductions listed by one of defendant's experts.  (Doc. 291-1 at 10-11; <u>see</u> Doc. 289-2 at 32, ¶ 15. QQ.)[16]

iv.    22.1 hours billed by Mr. Fortune between March 16, 2006 and June 13, 2006, for time spent on post-trial memoranda and fee application. (Docs. 324-2 at 3; 327.)

v.    24.1 hours billed by Mr. Gjoka (law clerk) between March 16, 2006 and June 13, 2006 for "duplicative" work on attorneys' fees application, preparation and attendance of post-trial hearing.  (Docs. 324-2 at 3-4; 327.)

---

[16]    These are listed as "unnecessary, excessive and/or unsuccessful motions, (Docs. 288-2, ¶ 34, Doc. 289-2, ¶¶ 15.C, R, Z, AA, BB); "excessive" time spent on preparation of or reviewing pleadings and correspondence, preparation for trial, and preparation of an application for attorneys' fees (Docs. 288-2, ¶ 36; 289-2, ¶¶ 15.S, V, CC, DD, HH, II, JJ, LL, NN); "unnecessary" or "excessively" billed depositions (Docs. 288-2, ¶¶ 37, 39-42; 289-2, ¶ 15.E, F, H I J, K, LM, , N, O, P, GG, KK, OO); duplication (Docs. 288-2, ¶¶ 38, 43; 289-2, ¶¶ 15.G, X, EE, HH); travel time (Docs. 288-3, ¶ 44, 45; 289-2, ¶¶ 15.Q, U, Y); updating time entries (Docs. 288-3, ¶ 48; 289-2, ¶ 15.V), and miscellaneous entries, primarily conferences (Docs. 288-2, ¶¶46, 47; 289-2, ¶ 15.B, D, T, FF, PP.)

vi.   67.3 hours billed by  Mr. Dehne (summer law clerk) between May 23, 2006 and June 12, 2006, reading the trial transcript and researching plaintiff's response to defendant's post- trial motion. (Docs. 324-2 at 4-5; 327.)

Defendant further argues that a 10% additional reduction of hours be made to the remaining hours to account for plaintiffs' use of "block billing," which defendant contends makes it impossible to delineate which charges in a multiple entry are warranted.  (Docs. 291-1 at 11-12; 288-2, ¶ 30l see Doc. 289-2, ¶ 15.HH.)

Defendant urges that for lodestar purposes, the hours permissible (including a 10% reduction) are: 933.34 hours for Mr. Fortune; 67.86 hours for Ms. Gossett; 314.68; hours for Mr. Gjoka; and  27 hours for Mr. Dehne, through June 13, 2006. (Docs 291-1 at 11-12; 324-2 at 4-6; 327.)[17]

The Court does not engage in a task by task analysis of which fees it is disallowing, but rather conducts an overall review, particularly of the miscellaneous hours objected to by defendant.   Plaintiffs submitted more than 2,100 hours for compensation.   The extensive volume of the request and supporting materials is

_____

[17]   While not determinative, the Court observes that the City spent a total of 2,641.4 attorney hours (apportioned among 11 attorneys) defending the case, with lead counsel devoting 1,495 hours to the case, plus 833.9 paralegal hours contributed by five paralegals.  (Doc. 333-2.)  Defendant's Motion To Strike Plaintiffs' Notice Of Filing Public Record Of Defendant's Billable Hours On This Case, As Of June 13, 2006 (Doc. 338) is denied.  See Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1574-75 (11th Cir. 1985).

20

prohibitive of conducting an hour by hour analysis. See St. Fleur, 149 Fed. Appx. at 854; Villano, 254 F.3d at 1311. That being said, the Court specifically overrules defendant's objection to travel time, Johnson v. University College, 706 F.2d 1205, 1208 (11th Cir. 1983); Scelta, 203 F. Supp.2d at 1334; George, 114 F. Supp.2d at 1290-91, (see Doc. 271-1 at 6, ¶24), and objection to time spent pursuing statutorily required administrative conditions precedent. Allen v. McClain EZ Pack of Alabama, Inc., Case No. Civ.A.03-0490, 2005 WL 1926636, at * 2 (S.D. Ala. 2005). The Court's review of the time entries submitted by plaintiffs (Doc. 271) does not warrant any substantial reductions, with the exception of reduction of hours for pursuing unsuccessful claims, as set forth above. The Court specifically disallows 7.1 hours sought by plaintiffs for Mr. Fortune's time relating to the filing of settlement records with the Court (Doc. 319-2 at 3), which the Court found to be inappropriate; and 32 hours attributed to summer law clerk Dehne "examining" excerpts of the trial transcript, (Doc. 319-2 at 20), as being excessive and unnecessary to the prosecution of this case.

Additionally, plaintiffs' request for "reimbursement of the $5,000.00 retainer paid by each of them, adding $20,000.00 to the lodestar," (Doc. 274-1 at 2) is denied.[18] Plaintiffs' counsel acknowledges that this payment was a "retainer," or legal fees, paid

---

[18] Defendant opposes Plaintiffs' request for the additional $20,000. (Doc. 291-1 at 12.)

by his clients to him, (Doc. 274-1 at 5), "which are refundable by me, out of whatever fee I ultimately recover." (Doc. 271-1 at 4, ¶ 16.) Adding $20,000 to the lodestar would amount to double recovery: $20,000 for plaintiffs' counsel and $20,000 for the plaintiffs themselves. If plaintiffs are each entitled to a $5,000 "reimbursement," it must be made from attorneys' fees recovered pursuant to the award of this Court.

### C. Summary of Lodestar Determination

**Plaintiffs' Lodestar**
(Docs. 319-1 at 3; 319-2)

|           | Hourly Rate | Hours    | Total Fee    |
|-----------|-------------|----------|--------------|
| Mr. Fortune  | $295     | 1,423.70 | $419,991.50  |
| Ms. Gossett  | $175     | 117.07   | 20,487.25    |
| Mr. Gojka    | $125     | 545.17   | 68,146.25    |
| Mr. Dehne    | $ 75     | 94.30    | 7,072.50     |
| Retainer     |          |          | 20,000.00    |
| **Total**    |          |          | **$535,697.50** |

**Defendant's Lodestar**
(Docs. 291-1 at 11; 324-2; 327.)

|           | Hourly Rate | Hours[19] | Total        |
|-----------|-------------|-----------|--------------|
| Mr. Fortune  | $235     | 933.34    | $219,334.90  |
| Ms. Gossett  | $150     | 67.86     | 10,179.00    |
| Mr. Gjoka    | $ 75     | 314.68    | 23,601.00    |
| Mr. Dehne    | $ 65     | 24.30     | 1,579.50     |
| **Total**    |          |           | **$254,694.40**[20] |

---

[19]   The "hours" set forth by the City includes a 10% reduction for "block billing." (See Doc. 291-1 at 11.)

[20]   The City's calculation of the lodestar varies slightly from the Court's. According to the City, the lodestar should be $255,189.00. (Docs. 291-1 at 14;

**Court's Determination of Lodestar**

|  | Hourly Rate | Hours | Total |
|---|---|---|---|
| Mr. Fortune | $260 | 1066.60 | $277,316.00 |
| Ms. Gossett | $160 | 92.07 | 14,731.20 |
| Mr. Gjoka | $100 | 539.17 | 53,917.00 |
| Mr. Dehne | $ 65 | 62.30 | 4,049.50 |
| **Total** |  |  | **$350,013.70** |

## D.    Adjustments to the "Lodestar"

Having reached a "lodestar" in the amount of $350,013.70, the Court must now determine whether any portion of the fee should be adjusted upward or downward to reflect additional considerations, chiefly the success or lack of success of plaintiffs' claims.  Hensley, 461 U.S. at 436-37; Norman, 836 F.2d at 1302-03.

Plaintiffs argue they are entitled to a multiplier enhancement to the lodestar fee of one-third to 100% of fees because of the difficulties plaintiffs would have faced securing other counsel; the unlikely chances for success; the extent of the litigation and its time requirements; and because "[t]he results of this case amount to a complete success by the Plaintiffs," achieving "virtually 100% of what the Plaintiffs were seeking."  (Doc. 274-1 at 8, 16-19.)  Plaintiffs emphasize the "huge social importance" of the verdict. (Doc. 274-1 at 19.)  Plaintiffs discount the loss of their 42 U.S.C. § 1981 claim against the City (Count II) by dismissal (Doc. 30), arguing that

---

324-2 at 5.)  It is unclear whether the City applies its proposed 10% reduction to all hours submitted by plaintiffs. (See, e.g., Doc. 324-2 at 3.)

23

the law was newly developing at the time, (Doc. 274-1 at 8-9), and they argue that they vigorously pursued their claims against Chief Alfred which they contend was lost on appeal because the Eleventh Circuit was misled as to the facts.  (Doc. 274-1 at 9-12.)  The dropping of their gender-based claims and remaining Section 1983 claim against the City, plaintiffs say, was tactical.[21]

Defendants counter that a 15% negative deduction should be applied to the lodestar because the plaintiffs did not achieve their initial goals in this litigation, which was to recover punitive damages and damages for mental anguish.  (Doc. 291-1 at 8-9, 14-15; see Doc.288-3 at 7, ¶ 62.)  Defendants contend that a total reasonable attorneys' fee in this case is $216,746.25.  (Doc. 327 at 1.)

Contrary to defendant's argument, the degree of plaintiffs' success is not measured solely by the amount of damages awarded by the jury.  It is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested[,] . . . if the relief obtained justified that expenditure of attorney time."  Hensley, 461 U.S. at 435 n.11.

Here, plaintiffs were largely successful in a difficult and hard-fought employment discrimination suit which the City defended vigorously.  For this reason, the Court will decline to reduce the lodestar fee.[22]  See E.E.O.C. v. Enterprise Leasing

---

[21]    Plaintiffs seek no enhancement of the lodestar fee under the FCRA due to the $100,000 per plaintiff sovereign immunity limitation.  (Doc. 274-1 at 16.)

[22]    The Court will not adjust the lodestar to reflect plaintiffs' failure on their Section 1983 claim against the City and Chief Alfred because that failure is already

Co., 2003 WL 21659097, at * 8 (having reduced the hourly rate and the number of hours billed, the lodestar will not be further reduced).

On the other hand, notwithstanding plaintiffs' counsel's own assessment of the "huge social importance" of the jury's verdict, the Court's own view is less effusive. Looking at the totality of the circumstances, the lodestar without a multiplier fully compensates plaintiffs' counsel for his efforts.  The Court concludes that a reasonable attorneys' fee in this case is the lodestar amount of $350,013.70.

## III.   Costs and Expenses

Plaintiffs seek a wide array of costs, contending that the prevailing plaintiff in a Title VII action is entitled to costs beyond those authorized by 28 U.S.C. § 1920. (Doc. 298-1 at 2.)  Rather, according to plaintiffs, recovery of costs pursuant to 42 U.S.C. § 2000e-5(k) should include all costs permitted by 42 U.S.C. § 1988, which authorizes costs to prevailing plaintiffs in enumerated civil rights cases, not including Title VII.  (Doc. 298-1 at 4.)  Plaintiffs are seeking a total of $52,665.09 in costs and expenses.[23]  (Docs. 274-1 at 3; 293-1; 319-1 at 3.)

---

reflected in the Court's reduction of the number of hours spent by plaintiffs pursuing that issue.  Moreover, the Court is not reducing the lodestar because of the jury's decision not to award mental anguish damages.

[23]     Plaintiffs' claim for recovery of a combined $20,000 retainer fee was addressed and disallowed as part of recoverable attorneys' fees.  It is not recoverable as a "cost."

Specifically, plaintiffs seek the following costs (Doc. 298-1 at 14-16):

| | |
|---|---|
| Courier: | $  339.41 |
| Copies: | 6,118.32 |
| Copy Service | 2,939.27 |
| Fax: | 866.00 |
| Mediator: | 2,150.00 |
| Computer Research: | 8,534.71 |
| Telephone (long distance): | 57.46 |
| Postage/Overnight | 850.03 |
| Depositions: | 13,934.24 |
| Experts: | 10,588.50 |
| Legal Fee: | 1,090.00 |
| Filing Fee: | 150.00 |
| Witness Fee: | 1,080.00 |
| Meals: | 365.65 |
| Process Server: | 863.28 |
| Travel: | 445.06 |
| Parking: | 230.41 |
| Lodging: | 442.58 |
| Video Fee: | 664.70 |
| Post-Trial: | 975.47[24] |
| **Total** | **$52,685.09** |

While defendant embraces the analysis found in <u>Drury v. Pena</u>, Case No. 95-848-Civ-J-21B, 1997 WL 718831, at * 11-15 (M.D. Fla. 1997), which holds that a prevailing plaintiff's recovery of costs under Title VII, pursuant to 42 U.S.C. § 2000e-5(k), is not governed by the more expansive costs allowed by Section 1988,   (Docs. 291-1 at 15; 304-1 at 1), defendant does concede that costs recoverable under Title VII are beyond those allowed by 28 U.S.C. § 1920, rejecting the conclusion of <u>Drury</u>, <u>supra</u>, that Title VI costs are limited to those permitted under Section 1920.  Rather, defendant attacks the reasonableness of the costs sought by plaintiffs, and questions whether the costs are indeed recoverable, even under a more expansive reading of

---

[24]     Plaintiffs seek recovery of costs for the post-trial period from March 16, 2006 through June 13, 2006 in the additional amount of $975.00.  (Docs. 319-1 at 3; 319-3.)   Defendant has no objection to these additional costs.  (Doc. 327 at 2.)

Section 2000e-5(k).  The City contends that plaintiffs are entitled to recover $33,965.47.  (Docs. 304-1 at 2-4; 327 at 2.)

Although there is some uncertainty as to the scope of allowable costs for a prevailing plaintiff in a Title VII action, see U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620-24 (11th Cir. 2000)(costs awarded to prevailing plaintiff in Title VII pursuant to Section 1920); George, 114 F. Supp.2d at 1298-1300 (same);  Drury, supra (same), the Court agrees with the parties that recovery of costs by a prevailing plaintiff under Title VII is not limited by 28 U.S.C. § 1920.  Indeed, Title VII expressly permits recovery of "expert fees" as part of a "reasonable attorney's fee," which, on its face, is beyond the scope of costs allowed by Section 1920.  42 U.S.C. § 2000e-5(k).  "Any expenses beyond the recoverable statutory costs [under Section 1920] or the fees awarded to compensate for an attorney's time should be pursued under 42 U.S.C. § 2000e-5(k)."  Stewart v. Town of Zolfo Springs, No. 96-1142-CIV-T-25 F, 1998 WL 776848, at * 2 (M.D. Fla. 1998)(Title VII case).  These expenses are subsumed within the concept of a reasonable attorney's fee, and are only recoverable if the party is entitled to attorneys' fees as prevailing party under Section 2000e-5(k).  Id.  Accord Mota v. University of Texas Houston Health Science Center, 261 F.3d 512, 529 (5th Cir. 2001)("[i]n Title VII cases, a district court has an additional source of authority for applying attorney's fees and costs, 42 U.S.C. § 2000e-5(k)").  Thus, the "'attorney's fee' allowed by Section 2000e-5(k) . . . include[s] 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the

course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." Mota, 261 F.3d at 529. The Court applies this reasonableness standard to the costs[25] sought by plaintiffs, and briefly addresses the substantive objections made by defendants. (Doc. 304-1 at 5-12.)

    i.    Photocopies: the Court agrees with defendant that a 25% reduction is reasonable and in accord with the reduction made in time spent on unsuccessful claims. Photocopy expenses are reduced from $6,118.32 to $4,588.74; copy service expenses are reduced from $2,939.27 to $2,204.45; and fax expenditures are reduced from $866.00 to $649.50.

    ii.    Computer Research; Similarly, expenses for computerized research are reduced by 25% from $8,534.71 to $6,401.03 to account for expenditures on unsuccessful and withdrawn claims.

    iii.    Postage, Overnight, and Courier: Postage and Overnight expenses are reduced 25% from 850.03 to 637.52. Courier costs are reduced 25% from $339.41 to $254.55.

    iv    Experts: The Court agrees with defendant that fees for psychologist Dr. Alan J. Waldman, should be disallowed. Dr. Waldman did not testify at trial due to plaintiffs' "informed decision to downplay Plaintiffs' claims for

---

[25]    Though analytically costs are subsumed as part of reasonable attorneys' fees under 42 U.S.C. § 2000e-5(k), the Court, for ease of discussion, will refer to the individual expenses sought as "costs."

mental anguish damages" (Doc. 298-1 at 19), and plaintiffs did not prevail on their claim for emotional damages.  The $5,812.50 cost of Dr. Waldman's fee should not be borne by defendant.

Further, the Court disallows the $1,776.00 fee of economist Dr. Rody Borg.  Dr. Borg did not testify at trial.  His work appears to be duplicative of that of economist Dr. Joseph Perry, who did testify for the plaintiffs at trial.

v.      Travel and Lodging: Though plaintiffs prevailed in defendants' appeal of the Court's denial of its motion to dismiss Counts I and II against Chief Alfred in his individual capacity on the basis of qualified immunity (Docs. 30, 52), plaintiffs ultimately lost their Section 1983 claims against Chief Alfred on the basis of qualified immunity at summary judgment, and subsequently dropped their Section 1983 claim against the City.  The $887.64 spent on travel and lodging in connection with this first appeal is disallowed.

vi.      Legal Fees/Contract Help:  The $1,090.00 spent by plaintiffs on contract attorneys hired to assist with plaintiffs' unsuccessful petition for writ of certiorari to the Supreme Court on the question of Chief Alfred's qualified immunity to the Section 1983 claim is disallowed.  Plaintiffs' argument that the cost is justified by the City's "misrepresentation" concerning roving captain positions (Doc. 298-1 at 20) is without merit.

vii.   <u>Meals</u>: The $365.65 spent by plaintiffs on meals "away from the office" (Doc. 298-1 at 21) should not be borne by the City and are disallowed.

viii.   <u>Videotaped Depositions</u>: Plaintiffs seek $664.70 for video fees for taping the depositions of Chief Alfred and former Mayor John Delaney. Inasmuch as there had never been any indication that either witness would be unavailable to testify at trial, and indeed, both witnesses did testify live at trial, the expenditure is not to be taxed as a cost. <u>Mota</u>, 261 F.3d at 529-30.

ix.   <u>Mediation</u>: Mediation costs do not fall within the limited category of expenses taxable under Section 1920 or 2000e-5(k). <u>Mota</u>, 261 F.3d at 530; <u>George</u>, 114 F.Supp.2d at 1300.   The $2,150.00 sought by plaintiffs is disallowed.

The remaining expenses listed by plaintiffs constitute "reasonable out of pocket expenses" incurred in the pursuit of plaintiffs' prevailing claims. <u>Mota</u>, 261 F.3d at 529.

To summarize, the Court awards the following costs to plaintiffs:

| | |
|---|---:|
| Courier: | $ 254.55 |
| Copies: | 4,588.74 |
| Copy Service | 2,204.45 |
| Fax: | 649.40 |
| Computer Research: | 6,401.03 |
| Telephone (long distance): | 57.46 |
| Postage/Overnight | 637.52 |
| Depositions: | 13,934.24 |
| Experts: | 3,000.00 |
| Filing Fee: | 150.00 |
| Witness Fee: | 1,080.00 |
| Process Server: | 863.28 |
| Parking: | 230.41 |
| Post-Trial: | 975.47 |
| **Total** | **$35,026.55** |

For the reasons set forth above, and upon due consideration, it is hereby

**ORDERED AND ADJUDGED:**

1.       Plaintiffs' Motion For Attorneys' Fees, Costs And Expenses As Prevailing Parties (Doc. 274-1) is **GRANTED IN PART, AND DENIED IN PART**, consistent with this Order.

2.       Plaintiffs' Consent Motion For Leave To File Complete Documentation Of Settlement Efforts Related To Plaintiffs' Motion For Fees, Etc. (DKT 274) (Doc. 292) is **DENIED.**

3.       Plaintiffs' Supplemental Motion For Attorneys' Fees, Costs And Expenses, Through June 13, 2006 (Doc. 319), is **GRANTED IN PART, AND DENIED IN PART**, consistent with this Order.

4.       Motion To Strike Plaintiffs' Notice Of Filing Public Record Of Defendant's Billable Hours On This Case, As Of June 13, 2006  (Doc. 338) is **DENIED.**

31

5.      The Court will enter Judgment For Attorneys' Fees, Costs and Expenses in favor of Plaintiffs George A. Williams, Michael A. Perryman, Michael B. Price, and Judy C. Sauls, as representative for the estate of Nolen A. Sauls, and against the City of Jacksonville, in the amount of $350,013.70 for attorneys' fees, and $35,026.55 for costs, for a total award of $385,040.25, plus post-judgment interest at the statutory rate.  28 U.S.C. § 1961.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record